J-S57039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.G.R. A/K/A J.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E., NATURAL FATHER | : | No. 696 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8798

| | | |
|---|---|---|
| IN THE INTEREST OF: C.W.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E., FATHER | : | |
| | : | No. 698 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8799

| | | |
|---|---|---|
| IN THE INTEREST OF: S.J.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E., FATHER | : | No. 700 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8801

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: DECEMBER 27, 2019**

D.E. ("Father") files these consolidated appeals from the Decrees[1] granting the Petition of the Luzerne County Children and Youth Services ("the Agency") and involuntarily terminating his parental rights to his minor, dependent children, B.G.R. a/k/a J.E. ("J.E."), a female born in April 2018, C.W.E., a male born in April 2016, and S.J.E., a female born in April 2014 (collectively, the "Children").[2]  The Orphans' Court terminated Father's parental rights to C.W.E. and S.J.E. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b), and terminated his parental rights to J.E. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (b).  We affirm.

C.W.E. and S.J.E. came into care on December 19, 2017, pursuant to an emergency shelter care Order, as a result of issues concerning housing, domestic violence, and drug and alcohol use relating to Mother and Father.

---

[1] While the docket reflects a recorded date of March 28, 2019, there is no notation on the docket that notice was given and that the Decrees were entered for purposes of Pa.R.C.P. 236(b).  **See Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); **see also** Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b).").  Thus, the Decrees were not entered and the appeal period was not triggered.  Although we consider the matter on the merits, we caution the Court of Common Pleas of Luzerne County as to compliance with the rules with regard to the entry of orders.

[2] By separate Decrees entered the same date, the Orphans' Court involuntarily terminated the parental rights of the Children's mother, D.R. ("Mother"). Mother has filed separate appeals with this Court, docketed at Nos. 695, 697, 699 MDA 2019.

N.T., 2/19/19, at 54-55. As reported by Agency caseworker, Denise Dessoye ("Dessoye"),

> [w]e received a referral that [Mother and Father] were living in a hotel. They lost their housing and [C.W.E.] was injured and had to get taken to a hospital for three stitches in his head. On that same day we received another referral [that] there was an article in the paper saying that [Father] was attempting to buy drugs at his dealer's house in Wilkes-Barre at 5:30 in the morning and he was severally [*sic*] beaten by his drug dealer.

*Id.* at 54. Subsequently, C.W.E. and S.J.E. were adjudicated dependent on December 29, 2017. *Id.* at 56.

J.E. came into care pursuant to an emergency shelter care Order on April 12, 2018. Dessoye recounted, "[J.E.] was born [in April 2018]. [Mother and Father] did not seek any services, nor did they have any housing. [Dessoye] was unable to reach them. The hospital was reporting that they left the hospital and did not come back, so we took shelter care of the child." *Id.* at 55. Thereafter, J.E. was adjudicated dependent on April 23, 2018. *Id.* at 56-57.

On November 15, 2018, the Agency filed Petitions to involuntary terminate Mother's and Father's parental rights to the Children. The Agency sought to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). The Agency filed amended Petitions as to C.W.E. and S.J.E. on February 8, 2019, in which it sought to terminate Father's parental rights as to C.W.E. and S.J.E. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing was conducted on the termination Petitions

on February 19, 2019.[3]  Mother and Father were present and represented by counsel.[4]  Neither Mother nor Father testified on their own behalf.

By Decrees entered March 28, 2019, the Orphans' Court involuntarily terminated the parental rights of Father.  Specifically, Father's parental rights as to C.W.E. and S.J.E. were terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).  Father's parental rights as to J.E. were terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (b).  On April 26, 2019, Father, through appointed counsel, filed Notices of Appeal, as well as

_____

[3] While the notes of testimony from this hearing are not included as part of the certified record, they are included as part of the reproduced record.  As the veracity is not in dispute, we rely on the copy contained within the reproduced record. **See Commonwealth v. Barnett**, 121 A.3d 534, 544 n.3 (Pa. Super. 2015) (stating that "[w]hile this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it.") (internal citation omitted).

[4] The Children were represented by a guardian *ad litem* ("GAL"), Maria Turetsky, Esquire, during this proceeding.  Upon review, we find the requirements of 23 Pa.C.S.A. § 2313(a) have been satisfied.  At the time of the hearing, C.W.E. and J.E. were almost three years old and one year old, respectively, and too young to express a preference.  Further, as to S.J.E., the evidence is not suggestive of any conflict between her best interests and legal interests. **See In re Adoption of L.B.M.**, 161 A.3d 172, 175, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to separate legal counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); **see also In re T.S.**, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding, because, at two and three years old, they were incapable of expressing a preferred outcome).

Concise Statements of errors complained of on appeal pursuant to Pa.R.A.P.

1925(a)(2)(i) and (b), which were consolidated *sua sponte* by this Court on

July 17, 2019.[5]

On appeal, Father raises the following issue for our review:

A. Whether the trial court erred in terminating parental rights
and/or abused its discretion[,] as testimony offered did not
establish by clear and convincing evidence the requirements of …
23[] Pa.C.S.A. [§] 2511(a)(2)[,](5)[,] and (8)[,] in that [Father]
has not caused the Child[ren] to be without essential parental
care, control, or subsistence necessary[,] because he has engaged
in court-ordered services that have remedied the circumstances
that originally gave rise to the Child[ren]'s placement[?]

Father's Brief at 5-6 (unnumbered).[6]

Father claims that the Agency failed to produce clear and convincing

evidence to terminate his parental rights under Section 2511(a)(2). **Id.** at 8,

---

[5] As counsel failed to file docketing statements on behalf of Father, pursuant to the Order of June 20, 2019, the matters were remanded for a determination as to whether counsel abandoned Father[,] and the taking of any further action to protect Father's right to appeal. As reflected by Orphans' Court Order of June 28, 2019, after hearing on June 27, 2019, the Orphans' Court directed counsel to file a docketing statement by July 1, 2019, to avoid a determination of abandonment. A July 10, 2019 Order removing counsel due to failure to correspond with this Court or file a docketing statement was vacated when counsel filed a docketing statement on July 10, 2019, which was accepted.

[6] Father waived any challenge to the sufficiency of the evidence to support the termination of his parental rights under Section 2511(b), as he did not specifically raise such a challenge in the Statement of Questions Involved portion of his brief. **See** Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Nevertheless, we will discuss the sufficiency of the evidence supporting the termination of Father's parental rights under section 2511(b), as the Orphans' Court considered the Children's best interest in its Opinion.

12 (unnumbered). Father asserts that he was compliant with the Agency's requests, including his cooperation with drug and alcohol services. *Id.* at 13-14 (unnumbered).

In matters involving involuntary termination of parental rights, our standard of review

> requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations, quotation marks and brackets omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

This Court may affirm a decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a), as well as a consideration of Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will consider the Orphans' Court's termination Decrees pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

- 7 -

abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have stated that

[i]n order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citation omitted). "Parents are required to make diligent efforts towards the

reasonably prompt assumption of full parental responsibilities…. [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." **In re A.L.D.**, 797 A.2d at 340 (internal quotation marks and citations omitted).

In **In re Adoption of S.P.**, 47 A.3d 817 (Pa. 2012), our Supreme Court, in addressing Section 2511(a)(2), concluded that

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [Section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

**Id.** at 828-29; **see also In re D.C.D.**, 105 A.3d 662, 675 (Pa. 2014) (holding that incarceration prior to the child's birth and until the child was at least age seven renders family reunification an unrealistic goal, and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made).

In the case at bar, in finding grounds for termination of Father's parental rights pursuant to Section 2511(a)(2), the Orphans' Court stated the following:

> [] Father's parental rights to the minor [C]hildren, … may be terminated under … Section 2511(a)(2). Credible testimony was presented at the hearing to show by clear and convincing evidence that Father did not complete his services, including mental health, substance abuse, counseling and parenting education.

[] Dessoye testified that she is a caseworker for [the Agency]. Her duties involve insuring the safety of [the C]hildren by visiting their home on a regular basis. She testified that she had been working with the minor [C]hildren since January 201[8].

[] Dessoye testified that [S.J.E. and C.W.E.] were placed on December 19, 2017[,] and [J.E.] was placed on April 12, 2018. She stated that [the Agency] received a referral that Mother and Father were living in a hotel and had lost their housing. She stated that [C.W.E.] was injured and had to be taken to the hospital. He received three stitches on his head. On that same day, the caseworker received another referral regarding an article in the newspaper stating [that] Father was attempting to purchase illegal substances from an alleged residence in Wilkes-Barre, Pennsylvania at 5:30 a.m. Father was severally [sic] beaten by an alleged drug dealer. As a result of this incident, [the Agency] sought an emergency shelter care [O]rder which was granted by this court.

[] Dessoye testified that [the Agency] developed a Family Service Plan for the family[,] which was adopted by the court as an [O]rder. The services consisted of having a mental health assessment, submitting to a drug and alcohol assessment, submitting to urinalysis testing, participating in the "[color] call in" random toxicology screen system on a daily basis, participating in a parenting education service and obtaining and maintaining safe and stable housing. [] Dessoye testified that she met with Father at the [Agency] office on several occasions to review the Family Service Plan and ensure that he understood the services.

[] Dessoye testified that at the time [J.E.] was born [in April 2018], Mother and Father had not participated in any of the required services contained within the Family Service Plan, nor did they have any housing. [] Dessoye was not able to reach them. The hospital reported that Mother and Father left the hospital and did not return. [The Agency] sought a shelter care [O]rder on behalf of [J.E.]

Father had a scheduled visit on November 14, 2018[,] with all three [C]hildren for two hours[,] which took place at the [Agency] office. [] Dessoye testified that she submitted a referral to Wyoming Valley [A]lcohol and [D]rug [S]ervices for Father in March 2018. She testified that during that time, Father was homeless. She attempted to locate Father in order to engage him

in the services. She contacted relatives, [and] researched the correctional facility system in the event he was incarcerated; however, she was not able to locate him. [Dessoye] testified that Father knew how to contact her and was specifically told to remain in contact with her since he did not have a telephone, nor an address. She testified that Father was not consistent in contacting her at the [Agency]. According to [] Dessoye, Father did not complete any drug and alcohol services at Wyoming Valley [Alcohol and Drug S]ervices.

[] Dessoye testified that Father indicated to her that he did not have significant "clean time" throughout the life of the case. Father admitted to her that he was using illegal substances throughout the case. [Dessoye] testified that Father admitted to his long[-]term use of illegal substances and of his use of heroin.

[] Dessoye testified that she did make a referral to Community Counseling Services for [Father] regarding his mental health issue in May 2018. However, Father did not engage in any counseling at Community Counseling Services. [Dessoye] testified that she attempted to locate Father in order to engage him in services. Father did not make any effort whatsoever to contact her regarding his services.

[] Dessoye testified that at the time of the hearing, Father was residing in a home with an elderly man. [Father] indicated to [] Dessoye that his home was not suitable for the three minor [C]hildren. [] Dessoye testified that the issues which led to the [C]hildren's placement still existed[,] and Father has not remedied these issues. She testified that she was concerned with Father's ability to care for the minor [C]hildren.

According to [] Dessoye, Father has not complied with any of the court[-]ordered services. Father only had two hours of contact with the minor [C]hildren[,] which was in a supervised setting. Father had never requested to expand his visits with the [C]hildren. [] Dessoye further stated that throughout Father's placement, Father continued to use illegal substances. [] Dessoye also testified that Father has never cared for the [C]hildren on a full-time basis. She stated that Father did not have a plan as to how he would take care of the [C]hildren seven (7) days per week. She also stated that Father did not have a support system. [] Dessoye testified that although Father made two attempts to visit

the [C]hildren in February and March of 2018, he did not make any attempts to visit the [C]hildren between May and July 2018.

[] Scott Carey [("Carey")] testified that he is an assistant CEO and treatment supervisor at Wyoming Valley Alcohol and Drug Services. [] Carey testified that Wyoming Valley [Alcohol and Drug Services] received a referral from [the Agency] regarding Father. [] Carey testified that Father did not appear for an evaluation or any treatment services at Wyoming Valley Alcohol and Drug Services. Therefore, he had no record of treatment for [] Father.

[] Alicia Singer [("Singer")] testified that she is employed at Community Counseling Services as an outpatient clinician and records custodian for [the Agency]. [] Singer testified that she received a referral from [the Agency] on April 12, 2018. Father had an intake appointment scheduled with Community Counseling Services on May 11, 2018. [] Singer stated that since Father was homeless, the appointment was scheduled through Father's caseworker at [the Agency]. [] Singer testified that she did not have Father's telephone number []or his address in order to personally contact him. [] Singer stated that Father did not appear for his intake appointment.

[] Singer testified that even subsequent to May 11, 2018, Father did not appear for any additional appointments. She stated that Community Counseling Services did notify [the Agency] that Father did not appear for his intake appointment. [] Singer explained that when a patient misses an appointment, it is up to the patient to reschedule his or her appointment. [] Singer stated that Father never engaged in any mental health treatment services at Community Counseling Services.

[] Louise Hogan [("Hogan")] testified that she is a urinalysis monitor at Catholic Social Services. [Hogan] testified that she conducts the urinalysis test scheduled by [the Agency]. [] Hogan testified that she received a referral from [the Agency] on December 20, 2017[,] regarding Father; however, Father did not appear for the drug screen, nor did he appear for his second drug screen scheduled for November 2, 2018. [] Hogan testified that Father did appear for a third drug screen on November 7, 2018[,] and a fourth drug screen on November 13, 2018. He tested positive both times for Suboxone. [] Hogan testified that Father submitted to a fifth drug screen on November 19, 2018[,] and

tested positive for cannabinoids. [] Hogan testified that Father submitted to a sixth drug screen on December 3, 2018[,] and he tested negative for all substances. Father submitted to a seventh drug screen on January 2, 2019[,] and he tested positive for Suboxone. [] Hogan testified that Father did not claim any of the medications for which he tested positive for Suboxone. He did claim the medication for which he tested positive for [S]uboxone on January 2, 2019. Subsequent to January 2, 2019, [] Hogan stated that Father did not submit to any additional drug screens.

Based upon the testimony of the various witnesses, summarized above, and based upon the evidence presented to the [c]ourt, the [c]ourt finds that subsequent to the placement of … [S.J.E. and C.W.E.] on December 19, 2017[,] and [J.E.] on April 12, 2018, Father did not complete the required services for mental health treatment and drug and alcohol treatment and parenting education. Father was not able to abstain from illegal substances during placement and did not make sufficient attempt[s] to contact [the Agency] in order to participate in the services. When Father was homeless, Father was aware that he did not provide a telephone number or a contact to [the Agency] in order to reach him. [] Dessoye testified that she provided him with a contact telephone number and fully explained the Family Service Plan to him. Despite having the contact telephone number from [] Dessoye, Father did not make an effort to reach out to [] Dessoye in order to participate in the [d]rug and alcohol program and mental health services. When Father submitted to many drug screens, all of Father's results were positive for illegal substances, except for one drug screen which was negative for illegal substance[s]. The [c]ourt finds that Father has not been able to remedy the conditions that gave rise to the placement of the [C]hildren.

….

Given the overwhelming evidence and testimony, it is clear that Father has received and/or has been offered extensive services and he failed to complete the services or even benefit from the services.

At this juncture, the [C]hildren's right to have proper parenting in fulfillment of their potential in a permanent, healthy, safe environment outweighs [Father's] interest. *In Re: J.A.S.,*

> *Jr.*, [820 A.2d 774 (Pa. Super. 2003)] (citing *In the Interest of Lillie*, 719 A.2d 327 (Pa. Super. 1998)).

Orphans' Court Opinion, 6/19/19, at 12-18 (citations to record omitted).

Further, as to incarceration, the Orphans' Court stated that

> Father was incarcerated from July 2018 to October 2018. [] Christina Oprishko [("Oprishko")] testified that she is a treatment coordinator at Luzerne County Division of Corrections. Her primary duties consist of overseeing the programming available for inmates within the jail. [] Oprishko testified that the services offered at the Correctional facility are drug and alcohol programming, parenting education, Alcoholic[s] Anonymous meetings, victim resource groups and a variety of other groups. [] Oprishko further stated that there is a mental health department in the jail.

> [] Oprishko testified that during Father's incarceration, Father attended two groups of drug and alcohol sessions, one on July 26, 2018[,] and the other on October 5, 2018. Father also attended a parenting session on August 20, 2018. The group in the drug and alcohol program meets on a weekly basis. Therefore, according to [] Oprishko, Father did not successfully complete the drug and alcohol treatment program.

> ….

> … [B]oth Mother and Father, in the case at bar, did not utilize their resources while in prison to pursue a close relationship with their minor [C]hildren…. [] Dessoye testified that Father only had two visits with … [S.J.E. and J.E.] in jail for one hour.

> … [B]oth Mother and Father … did not exert themselves whatsoever, nor did they utilize resources to maintain a place of importance in their [C]hildren's lives.

> The [c]ourt finds that Mother and Father have refused or failed to perform any parental duties since the date of placement of their [C]hildren.

*Id.* at 23-25 (citations omitted).

Our review of the record confirms that the Orphans' Court's findings and determinations are supported by competent, clear and convincing evidence,

- 14 -

and we otherwise discern no abuse of discretion or error of law. *See In re T.S.M.*, 71 A.3d at 267. The record reveals that Father failed to complete court-ordered services aimed at reunification with the Children. As this Court has repeatedly stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id.* Thus, termination pursuant to Section 2511(a)(2) was proper.

We next determine whether termination was proper under Section 2511(b). As to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the

parental bond.   *In re K.M.*, 53 A.3d at 791.   However, …
evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267.   "In cases where there is no evidence of any

bond between the parent and child, it is reasonable to infer that no bond

exists.   The extent of any bond analysis, therefore, necessarily depends on

the circumstances of the particular case."   *In re K.Z.S.*, 946 A.2d 753, 762-

63 (Pa. Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use

expert testimony.   Social workers and caseworkers can offer evaluations as

well.   Additionally, Section 2511(b) does not require a formal bonding

evaluation."   *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major
aspect of the subsection 2511(b) best-interest analysis, it is
nonetheless only one of many factors to be considered by the
court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can
equally emphasize the safety needs of the child, and
should also consider the intangibles, such as the love,
comfort, security, and stability the child might have
with the foster parent….

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation

marks and citations omitted).

In finding that the Children's emotional needs and welfare favor

termination pursuant to Section 2511(b), the Orphans' Court reasoned as

follows:

[] Dessoye testified that … [S.J.E.] and [C.W.E.] were placed
with the same foster family[,] and [ J.E.] was placed with another

foster family. All [C]hildren have been placed with their foster families since the date of placement. With respect to [S.J.E.] and [C.W.E.]'s foster parents, the foster family [already] has one adopted child who is ten (10) years old [and] another adopted child who is seven (7) years old. With respect to J.E.'s placement, the foster family has two children, an eight-year-old and a four-year-old. [] Dessoye testified that all three [C]hildren are assimilated into their foster families. They participate in all family functions, birthdays, and holidays. There are pictures of the [C]hildren in the foster families' home. The [C]hildren referred to the foster [m]other and [f]ather as "Mom and Dad." [] Dessoye testified that the families are aware that[,] in the event they are permitted to adopt the [C]hildren, the [C]hildren would be able to inherit from their estate.

[] Dessoye testified that the foster parents for all three [C]hildren meet the physical needs of the [C]hildren. They provide food, housing, clothing and shelter. They also ensure that the [C]hildren attend their medical appointments. According to [] Dessoye, the foster parents also meet the [C]hildren's developmental needs. [S.J.E.] is currently in an educational program known as Head Start. The foster family also has toys, books and other activities for the [C]hildren at the residence.

[] Dessoye testified that the foster families also meet the [C]hildren's emotional needs. She stated that[,] when the [C]hildren are sick or sad, they seek comfort from the foster parents. She also testified that the [C]hildren are attached to the foster parents and that there is a very strong bond between them. She described the relationship between the foster parents and the [C]hildren as a parent[-]child relationship.

….

[] Dessoye testified that based on her observation of the interaction between Father and the minor [C]hildren, she described their interaction as a friendly visit. She stated that when the visits between [] Father and the minor [C]hildren ended, the [C]hildren did not show any signs of distress upon leaving their [F]ather.

[] Dessoye testified that she did not believe that the [C]hildren would suffer any detrimental impact should the court grant the Petition[s] to terminate [Mother's and Father's] rights.

[] Dessoye testified that she believes that the foster parents' relationship with the minor [C]hildren is stronger than the natural parents' relationship with the [C]hildren. She stated that she also believes that adoption would be in the [C]hildren's best interest.

[] Dessoye also stated that [S.J.E.] and [C.W.E.] visit [J.E.] on a monthly basis. The two sets of foster parents have agreed to schedule opportunities for continuing contact in the event the parents' rights are terminated and the siblings are to be adopted. The foster parents would be willing to have the minor [C]hildren continue contact with the natural parents as long as the natural parents remain clean from illegal substances or alcohol. [] Dessoye testified that both sets of foster parents for the minor [C]hildren are willing to be permanent resources for the minor [C]hildren and wish to adopt them.

Orphans' Court Opinion, 6/19/19, at 10-12 (citations to record omitted).

Further, the Orphans' Court determined that

Mother and Father cannot meet the [C]hildren's physical, developmental and emotional needs. Mother and Father have been given ample time to address and remedy their problems, but have failed to successfully do so. In stark contrast, the foster parents have amply demonstrated that they meet the physical, developmental and emotional needs of the minor [C]hildren, … and the [C]hildren have thrived under their care. The [C]hildren need consistency and deserve a permanent home with loving capable parents. The only way to provide this is to terminate the rights of [] Mother and Father. Clearly, it is in the [C]hildren's best interest to do so.

*Id.* at 26.

Upon review, we discern no abuse of the Orphans' Court's discretion. The record supports the Orphans' Court's finding that the Children's developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). *See T.S.M.*, 71 A.3d at 267. There was sufficient evidence to allow the Orphans' Court to make a determination of the Children's needs and welfare, and as to the lack of a bond

between Father and the Children such that, if severed, would have a detrimental impact on them.

While Father may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. At the time of the hearing, C.W.E. and S.J.E. had been in care approximately fourteen months, and J.E. had been in care approximately ten months. The Children are entitled to permanency and stability. As we have repeatedly stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion, and conclude that the Orphans' Court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2019